# BODIN,
*Appellant,*

*v.*

# B. & L. FURNITURE COMPANY,
*Respondent.*

### (No. 185735, CA 14355)

601 P2d 848

■■■■■■■

■■■■■■

Magar E. Magar, Portland, argued the cause and filed the brief for appellant.

David P. Weiner, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

■■■■■■■

**BUTTLER, P. J.**

Plaintiff appeals from a judgment entered on a directed verdict dismissing his complaint alleging a claim against defendant under the Unfair Trade Practices Act, ORS 646.605 to 646.656. The trial court granted defendant's motion for a directed verdict on the grounds that: (1) the cause is barred by the statute of limitations, (2) there were no affirmative misrepresentations made to plaintiff, and (3) a copy of the complaint was not mailed to the Attorney General pursuant to ORS 646.638(2). Error is assigned to the trial court's ruling on all three grounds.

On defendant's motion for a directed verdict, the evidence must be viewed in the light most favorable to the plaintiff and plaintiff must be accorded the benefit of every reasonable inference which may be drawn therefrom. *Gordon Creek Tree Farms v. Layne et al.*, 230 Or 204, 358 P2d 1062, 368 P2d 737 (1962); *Dean v. Poole*, 235 Or 606, 386 P2d 453 (1963).

On October 21, 1976, plaintiff purchased from defendant some household furnishings, including two sets of boxsprings and mattresses. While he was in the store, plaintiff advised defendant that he wished new furnishings, and was taken to the second floor of defendant's store where the new furnishings were on display; the used furniture and furnishings were displayed in the basement. The retail installment contract under which plaintiff purchased the furnishings, including the two sets of boxsprings and mattresses, did not indicate that the boxsprings and mattresses were used or rebuilt. The mattresses and boxsprings which were delivered to plaintiff, along with the other furnishings purchased that day, had the appearance of new articles and, in fact, they had been recovered with new material. Neither plaintiff nor his wife had any reason to think that the mattresses and boxsprings were second-hand. On or about November 1, 1977, while plaintiff was moving one of the purchased boxspring and mattress sets to another room in his home,

a red tag fell off one of the items; plaintiff's wife picked it up and observed that it stated: "Second-hand article." At that time they checked the other mattress and boxspring set and found that each of the items had a similar tag appended to it. This action was commenced in February of 1978.

Although the complaint disclosed that the action was not commenced within one year from the date of the purchase, and contained no allegations to negative lack of diligence or set forth the reasons why there was not an earlier discovery of the fraud, defendant did not demur to the complaint. *See Dixon et ux v. Schoonover et ux*, 226 Or 443, 359 P2d 115, 360 P2d 274 (1961). Instead, defendant alleged affirmatively in its answer that the action had not been commenced within the time permitted by law. It is apparent that both parties treated the question of the statute of limitation as one of fact, as did the trial court at the close of plaintiff's case when defendant first moved for a directed verdict. At that time the trial court denied the motion, but after the close of the trial, defendant's renewed motion for a directed verdict was granted.

The applicable statute, ORS 646.638(5) requires that actions under the Unfair Trade Practices Act "shall be commenced within one year from the discovery of the unlawful method, act or practice." Under the analogous statute of limitation for fraud, the period of limitation commences to run upon "discovery," and the Oregon courts have consistently held that the period of limitation begins to run when the plaintiff knew or should have known of the alleged fraud. In *Forest Grove Brick v. Strickland*, 277 Or 81, 86, 559 P2d 502 (1977), the Court said:

> "* * * Not only knowledge but imputed or constructive knowledge will commence the period of limitations. A person is charged with knowledge that 'a reasonably diligent inquiry would disclose' [footnote omitted] when he receives 'notice enough to excite attention and put a party upon his guard or call for an inquiry * * *'."

[734]

In *Mathies v. Hoeck*, 284 Or 539, 542-43, 588 P2d 1, 2-3 (1978), the Court stated:

"The word 'discovery'in the statute has been interpreted by this court in an objective manner. *See Forest Grove Brick v. Strickland*, 277 Or 81, 559 P2d 502 (1977), and cases cited therein. Consequently, the period of limitations for fraud begins to run when the plaintiff knows or should have known of the alleged fraud. Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis. First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry * * *.' *Linebaugh v. Portland Mortgage Co.*, 116 Or 1, 14, 239 P 196 (1925). If plaintiff had such knowledge, it must also appear that 'a reasonably diligent inquiry would disclose' the fraud. *Wood v. Baker*, 217 Or 279, 287, 341 P2d 134 (1959). Whether or not the plaintiff should have known of the fraud at a particular point in time is normally a question for the jury except where only one conclusion can reasonably be drawn from the evidence. * * *" (Citations omitted.)

The trial court held as a matter of law that since the red tags were on the mattresses and boxsprings when they were delivered to plaintiff, plaintiff *could* have discovered that they were second-hand goods at the time of delivery. Therefore, it concluded as a matter of law that the statute of limitations had run. We disagree. The trier of fact could have found that plaintiff had absolutely no reason to believe that the mattresses and boxsprings were used, anymore than they had a reason to believe that the other articles they had purchased were second-hand; that the mattresses and boxsprings did not have the appearance of second-hand goods, and there was no reason to read the tags which were on the mattresses and boxsprings. The trier of fact could find that defendant showed plaintiffs new articles in the store, and then delivered second-hand articles with new coverings so that they appeared to be new. We conclude that there was a jury question whether plaintiff had sufficient knowledge to "excite attention and put a party upon his guard or call

for an inquiry" prior to the time he actually saw and read the red tags. Accordingly, the trial court erred in holding as a matter of law that the period of limitations had run.

■ Defendant's contention, accepted by the trial court, that plaintiff's claim must fail because there were no affirmative misrepresentations made with respect to the new or second-hand nature of the goods is not well-founded. That no such affirmative misrepresentations need be shown is answered by ORS 646.608(2), which provides:

> "A representation under subsection (1) of this section or ORS 646.607 may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact."

The Supreme Court recently applied that subsection in a case where defendant sold a demonstrator vehicle to the plaintiff, who had asked to see a new car. *Searcy v. Bend Garage Company*, 286 Or 11, 15, 592 P2d 558 (1979). In that case, the Court stated:

> "* * * [T]he jury could find that Walker's actions in taking plaintiff to inspect the Suburban after plaintiff had indicated he was interested in a new car amounts to a representation that the vehicle was new. * * *
>
> "* * * * *
>
> "Defendant's act of showing plaintiff a demonstrator after plaintiff asked to see new cars without disclosing that the vehicle had been used as a demonstrator could be construed as an assertion by conduct that the vehicle was new."

Defendant was not entitled to a directed verdict on this ground and, to the extent that the trial court based its ruling on this proposition, it was in error.

■ The trial court also ruled that defendant was entitled to a directed verdict because plaintiff had failed to mail a copy of the complaint to the Attorney General, as required by ORS 646.638(2), which provides:

> "Upon commencement of any action brought

under subsection (1) of this section the party bringing the action shall mail a copy of the complaint or other initial pleading to the Attorney General and, upon the entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the Attorney General. Failure to mail a copy of the complaint shall not be a jurisdictional defect, but no judgment shall be entered for the plaintiff until proof of mailing is filed with the court. Proof of mailing may be by affidavit or by return receipt of mailing."

It appears from the face of the statute that the failure to mail a copy of the complaint to the Attorney General was not jurisdictional and that the case could have been tried. However, the statute precludes the entry of a judgment for the plaintiff until proof of mailing was filed with the court.

It follows that the trial court erred in granting defendant's motion for a directed verdict.

Reversed and remanded.