Argued and submitted February 26, reversed and remanded June 12, 2002

Donna WESTERBERG,
Neil A. Gearin, Ellen Vanantwerp,
and Henrietta Duran,
*Appellants,*

*v.*

Harold C. MADER, Jr.,
and Linda S. Mader,
husband and wife,
*Respondents.*

00-0104; A113429

48 P3d 192

Andrew S. Noonan argued the cause for appellants. With him on the briefs was Long, Delapoer, Healy, McCann & Noonan, P.C.

Natasha A. Zimmerman argued the cause for respondents. With her on the brief was Morley, Thomas, McHill & Phillips, LLC.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiffs Donna Westerberg, Neil Gearin, Ellen Vanantwerp, and Henrietta Duran appeal from a judgment granting a directed verdict to defendants on plaintiffs' claims to recover on a promissory note and for fraud in concealing the note from them. The trial court held that there was insufficient evidence to support those claims. ORCP 60. As nonmoving parties, plaintiffs are entitled to the benefit of every reasonable inference that could be drawn from the evidence when viewed in the light most favorable to them. *Cole v. Ford Motor Co.*, 136 Or App 45, 49, 910 P2d 1059 (1995). We reverse.

Plaintiffs are four of the children of Alberta Gearin (Gearin). Defendant Linda Mader is Gearin's remaining child; defendant Harold Mader is her husband. On August 13, 1987, Gearin sold her house to defendants for $20,000. In payment, defendants delivered to Gearin[1] a promissory note in which they promised to pay $20,000 to plaintiffs and Linda Mader. The note required monthly interest-only payments at the rate of eight percent; the entire principal was due on September 1, 1990. The note was secured by a trust deed on the property; plaintiffs and Linda Mader were the beneficiaries of the trust deed. In exchange for those documents, Gearin executed a warranty deed conveying the house to defendants.

Defendants made no payments to plaintiffs under the note. Instead, they made regular interest payments to Gearin. In early 1989, they tendered $20,000 to Gearin as payment in full on the note. Gearin told defendants to pay $18,000 as full payment; they did so. Gearin then gave $2,000 to each plaintiff. In order to remove the lien of the trust deed from the title to the property, defendants delivered a request for reconveyance to the trustee. The request was in the names of plaintiffs and Linda Mader, but no plaintiff signed it. Instead, defendants signed the names of at least two, and possibly all, of the plaintiffs to the request.

---

[1] The transaction closed in escrow, and the title company that handled the escrow both prepared and physically delivered the promissory note and the trust deed.

Plaintiffs knew in 1987 that Gearin had sold her house to defendants, but they testified that they did not know about the note and trust deed in their favor until 1999.[2] At that time, Westerberg, who had a power of attorney from Gearin and was working to clarify her financial affairs, found the documents in a locked box under Gearin's bed. Plaintiffs then asked defendants for payment. Defendants refused, leading to this lawsuit. Westerberg currently has possession of the note.

At trial, Gearin and defendants testified that Gearin had not intended to give plaintiffs any rights in the proceeds from the sale of her house so long as she was alive. Rather, they told the title company that prepared the documents that Gearin wanted to make sure that, if she died before payment for the house was complete, each of her children would receive an equal share of the amount that was then outstanding. They testified that the title company must have misunderstood Gearin's intent when it drafted the promissory note and the trust deed and that, because they signed so many documents at the closing, they failed to notice the details of those particular documents. They agreed that the title company's forms contained statements advising them to review all of the documents carefully.

In their claim on the promissory note, plaintiffs allege that Westerberg is the holder of the note and that the full amount of principal and interest is now due. In their fraud claim, they allege that defendant fraudulently concealed the existence of the note and the execution of the request for reconveyance and that that concealment damaged plaintiffs by depriving them of their interest in the note. In their answer, defendants alleged that there was no consideration for the note and that the execution of the note was the result of the mutual mistake of Gearin and defendants.

■■ The trial court granted defendants' motion for a directed verdict on the ground that there was insufficient evidence to support the claims, and defendants support their action on the same grounds. *See McDonald v. U.S. National*

---

[2] Defendants testified that they explained the situation to plaintiffs in 1989 and received authority to sign their names to the request for reconveyance.

*Bank*, 113 Or App 113, 115, 830 P2d 618, *rev den* 314 Or 573 (1992).[3] They first assert that there is not sufficient evidence that plaintiffs were third-party beneficiaries of the real estate transaction because the purpose of the transaction was to sell the house and to pay Gearin. That argument is based on defendants' view of the facts. Both the note and the trust deed expressly listed Gearin's children as the payees and beneficiaries. That in itself could support a conclusion that Gearin intended them to have the entire benefit of her sale of the house to defendants. Her subsequent gift of $2,000 to each child from the proceeds of the sale could support an inference that she intended them to benefit from the sale, although she had subsequently changed her mind about the extent of the benefit. If the jury found those facts, plaintiffs and Linda Mader could be intended third-party donee beneficiaries of the contract of sale between Gearin and defendants. The fact that Gearin testified at trial, at a time when she was estranged from plaintiffs, that she intended to receive the benefit of the sale herself simply raises a factual issue that was for the jury to resolve. The jury would have been entitled to disbelieve Gearin's testimony at trial about what she intended in 1987.

■   Defendants also argue that the note was never delivered to Westerberg and that she therefore was not a holder of it. ORS 71.2010(20)(a)(B) defines a "holder" with respect to a negotiable instrument as "the person in possession of the negotiable instrument" if the "instrument is payable to an identified person, and the identified person is in possession." ORS 73.0105(1) provides that an instrument is issued upon "the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person." Defendants delivered the note to the title company, which delivered it to Gearin. A jury could find that they made the delivery with the intent that someone, either Gearin or plaintiffs, obtain

---

[3] The trial court also ruled that there was a mutual mistake between Gearin and defendants. In doing so, it erroneously resolved factual issues rather than viewing the evidence most favorably to plaintiffs, the nonmoving parties. *See McDonald*, 113 Or App at 115. As a result, we do not need to consider the extent to which mutual mistake may be a defense in the absence of a claim for reformation of the note and trust deed.

rights in it. Westerberg is one of the persons to whom the note is payable. The jury could find, under the relevant statutes, that she is a holder of it.

■■ Defendants support the trial court's directed verdict on the fraud claim on several grounds that require us to accept their view of the facts, which again is inappropriate under ORCP 60. They also argue that, as the trial court held, there is no evidence that defendants would benefit from fraudulently concealing the note and trust deed. The elements of a fraud claim are:

> "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." *Conzelmann v. N.W.P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757 (1950).

None of those elements requires that the defendant have benefitted from the fraud. *Cf. Wulf v. Mackey*, 135 Or App 655, 660-61, 899 P2d 755, *rev den* 322 Or 168 (1995) (It is not necessary to plead or prove that defendants benefitted from breach of fiduciary duty to minority shareholder.). Rather, the focus is on whether the plaintiff's reasonable reliance on the defendant's false representation caused harm to the plaintiff. There is evidence from which the jury could have found that that happened in this case. The trial erred in granting the motion for directed verdict.

Reversed and remanded.